PEOPLE ex rel. McDONNELL v. PRENDERGAST, City Comptroller, et al.
(No. 7032.)

(Supreme Court, Appellate Division, First Department. April 23, 1915.)

1. EXECUTORS AND ADMINISTRATORS ⬅24 — PUBLIC ADMINISTRATOR — APPOINTMENT OF STENOGRAPHER—STATUTORY PROVISIONS.

Under Laws 1912, c. 548, as amended by Laws 1913, c. 825, authorizing the surrogate of Bronx county to appoint a public administrator of the county with powers within the county, conferred on the public administrator of the county of New York, with an annual salary and allowance for services and expenses as are allowed to the county treasurer under Code Civ. Proc. § 2668, providing that a county treasurer when acting as a public administrator shall be allowed on the settlement of his accounts for his expenses as other administrators and for his services double the commissions allowed them by law, and Laws 1898, c. 230, providing for the discharge of the office of public administrator of the county of New York by an assistant public administrator and vesting in the public administrator the appointment and removal of his subordinates, the public administrator of the county of Bronx has no authority to appoint a stenographer and typewriter in his office for a compensation to be paid out of the funds of the city of New York.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 132–140; Dec. Dig. ⬅24.]

2. EXECUTORS AND ADMINISTRATORS ⬅24—PUBLIC ADMINISTRATOR—APPOINTMENT OF STENOGRAPHER—STATUTORY PROVISIONS.

The authority conferred on the board of estimate and apportionment by Laws 1912, c. 548, § 4, as amended by Laws 1913, c. 266, prescribing the salaries of elective officers of the county of Bronx and declaring that except as provided the positions, terms, grades, salaries, and compensation of all members who may be appointed shall be fixed by the board of estimate and apportionment of the city of New York, and shall be audited and paid in the manner provided for the audit and payment of salaries of all county officers, is limited to appointees of elective officers named in the section, and the duties performed by the public administrator of the county of Bronx and for which he receives a salary and fees are not embraced in the public offices to which the section relates, and the public administrator may not appoint a stenographer and typewriter in his office to be paid by the city of New York at a compensation fixed by the board of estimate and apportionment.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 132–140; Dec. Dig. ⬅24.]

Ingraham, P. J., and Scott, J., dissenting.

Appeal from Special Term, New York County.

Mandamus by the People, on the relation of Elizabeth M. McDonnell, against William A. Prendergast, as Comptroller of the City of

New York, and another, as City Paymaster of the City of New York, to compel defendants to make payment to relator on account of salary as stenographer and typewriter in the office of the public administrator in the County of Bronx. From an order granting a peremptory writ, defendants appeal. Reversed. ·

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Charles J. Nehrbas, of New York City (Terence Farley and Toney A. Hardy, both of New York City, on the brief), for appellants.

Joseph H. Fargis, of New York City, for respondent.

LAUGHLIN, J. On the 27th day of July, 1914, the public administrator of Bronx county appointed the relator to the position of stenographer and typewriter in his office. Her name was certified to him by the state civil service commission as being eligible for appointment; and the board of estimate and apportionment of the city of New York had on the 26th day of June, 1914, by resolution purporting to have been adopted pursuant to the provisions of chapter 548 of the Laws of 1912, as amended by chapters 266 and 825 of the Laws of 1913, assumed to fix certain positions and salaries in the office of the public administrator of Bronx county, in addition to those theretofore established, and among others the following, "stenographer and typewriter," at a rate of salary per annum of $600; and on the same day said board adopted a resolution approving a schedule of positions and salaries for the office of said public administrator for the year 1914, including the position of "stenographer and typewriter" at the same salary. The purpose of the latter resolution evidently was to provide for the issue of revenue bonds for the payment of the salaries for three positions created by the former resolution, the salary of the public administrator having been provided for by the tax levy. The relator accepted the appointment and discharged the duties assigned to her by the public administrator down to and including the 30th day of November, 1914, and she received the salary at the rate prescribed for the months of August, September, and October. The pay roll of the office for the month of November, 1914, was prepared in the usual form, including the name of the relator, the title and classification of her position and salary and residence, and it was certified by the state civil service commission and transmitted to the comptroller of the city. It appears that there were funds available for the payment of the salary, but the comptroller and the city paymaster, evidently claiming that the position had not been legally created, refused to take the steps necessary to entitle the relator to receive the same.

[1] Bronx county was created by chapter 548 of the Laws of 1912, which was amended by chapters 266 and 825 of the Laws of 1913. Section 3 of said chapter 548, as amended by said chapter 825, authorized the surrogate of Bronx county to appoint "a public administrator of the county of Bronx," and provided that "such public administrator shall have all the authority and powers within said county of Bronx as are now conferred by law upon the public administrator of the county of New York," and that his salary should be $4,000 per

annum, and that he should in addition thereto "receive and retain to himself the same allowance for his services and expenses incurred as are allowed to a county treasurer under section twenty-six hundred and sixty-seven of the code of civil procedure." We find no provision of law authorizing the public administrator to appoint a stenographer and typewriter, or to make any appointment to a public office or position. There was no provision in section 2667 of the Code of Civil Procedure referred to in the statute, with respect to an allowance to a county treasurer for services and expenses; but section 2668 as it then existed (now section 2593, New Surrogate's Practice Act; chapter 443, Laws of 1914) contained such a provision, and doubtless that is the section intended by the Legislature. It provided that a county treasurer, when acting as a public administrator, "must be allowed on the settlement of his accounts for his expenses as other administrators, and for his services double the commissions allowed them by law."

The general rule is that an administrator must personally perform, or at his own expense provide for the performance of, all clerical duties incident to the administration. Matter of Binghamton Trust Co., 87 App. Div. 26, 83 N. Y. Supp. 1068. But we are not now concerned with the question as to allowances to the public administrator for expenses for clerical or other work. The question presented for decision is whether he had authority to appoint the relator to the position of stenographer and typewriter, and whether she is entitled to receive a salary from the city. No provision of law is cited by counsel for either party expressly authorizing the public administrator of the county of New York to appoint subordinates in his office. The only statutory provisions to which our attention has been drawn, relating to the office of public administrator of the county of New York, are those contained in chapter 230 of the Laws of 1898. Section 2 of that act requires any person appointed to the office of public administrator of the county of New York to execute a bond for the faithful discharge of his duties, and it provides for the discharge of the duties of the office by an assistant public administrator in the event of the sickness or other disability of the public administrator. The final sentence of the section vests the power of appointment and removal of the public administrator in the surrogates of the county, and it vests in the public administrator "the appointment and removal of his subordinates."

Doubtless the office of assistant public administrator was created by these provisions and the authority to appoint to that office was vested in the public administrator, and it may be that any necessary subordinate positions were created by implication, since the authority to appoint and remove subordinates is vested in the public administrator, and especially since by the provisions of section 3 of the act the public administrator is required to account to the city for all fees, costs, and other moneys received by him, and he is forbidden to receive to his own use any fees or emoluments in addition to his salary. It was, of course, competent for the Legislature, notwithstanding the fact that the public administrator of Bronx county is authorized to receive fees in addition to salary, to provide for the appointment of a clerical force in his office at the public expense, as has been done in the case of the sheriff of the county of New York, who receives both salary and fees.

See section 2, c. 523, Laws of 1890. But, if it had been so intended, I am of opinion that it would have been expressly so provided. The Legislature did not, I think, intend to confer upon the public administrator of Bronx county authority to make appointments to offices or positions by the reference in the statute to the authority of the public administrator of the county of New York, and it is not so claimed by counsel for the respondent. That reference was intended, I think, merely to obviate the necessity of incorporating in the statute the general powers intended to be conferred upon the public administrator and the duties of the office.

[2] Counsel for the respondent bases his argument upon the provisions of section 4 of chapter 548 of the Laws of 1912, as amended by chapter 266 of the Laws of 1913. That section prescribes the salaries of the elective officers of the county, and then provides as follows:

"And except as herein otherwise provided the positions, terms, grades, salaries, and compensation of all persons who may be appointed under the provision of law by any of the officers above mentioned or who may be required to carry on the public business as contemplated by this act shall be fixed by the board of estimate and apportionment of the city of New York, and such salaries or other compensation and all other county charges and expenses of the county of Bronx shall be audited and paid by the department of finance in the manner provided for the audit and payment of the salaries of all county officers and the charges and expenses of the counties now included within the city of New York by chapter three hundred and seventy-eight of the laws of eighteen hundred and ninety-seven, · and all acts amendatory thereof and supplemental thereto."

The public administrator is not named in that section, and therefore the provisions thereof do not authorize the board of estimate and apportionment of the city of New York to fix salaries of any subordinates appointed by him. The authority of said board to prescribe with respect to positions, terms, grades, salaries, and compensation is, I think, limited to appointees of the elective officers named in the section. If it had been contemplated that authority was conferred upon the public administrator by the reference to the powers of the public administrator of the county of New York, it is reasonable to suppose that he would have been included in the enumeration of officers in this section, so that authority would have been thereby conferred upon the board of estimate and apportionment to fix the terms, grades, salaries, and compensation of those he was so authorized to appoint. Nor may authority in the public administrator to make the appointment be found to rest in the statute by implication, on the theory that by the provisions of said section 4 herein quoted the board of estimate and apportionment was authorized to prescribe with respect to positions, terms, grades, salaries, and compensation of persons whose services may be required to carry on the public business. The provisions of the statute relating to persons whose services may be required to carry on the public business and whose appointment was not then authorized by law relate, I think, to positions subsequently created pursuant to law. The surrogate is included in the enumeration of officers in said section, and the public administrator is appointed by the surrogate, but is not included in said enumeration. It is a reasonable

inference that the authority conferred upon the board of estimate and apportionment with respect to positions not created by the express provisions of the statute relates to positions created in the offices the heads of which are enumerated in the section. I am of opinion that the duties required to be performed by the public administrator, and for which he receives a salary and fees which are prescribed by the statute relating to a county treasurer acting as a public administrator, are not embraced in the public business to which the provisions of said section 4 relate, and that it was intended that he should, at his own expense, employ such services as might be necessary to enable him properly to perform the duties of the office, and that his employés are not public officers and do not hold public positions.

It follows therefore that the order should be reversed, with $10 costs and disbursements, and motion denied, with $10 costs. Order filed.

McLAUGHLIN and CLARKE, JJ., concur.

SCOTT, J. (dissenting). The facts are fully stated in the opinion of Mr. Justice LAUGHLIN. The sole question, as I look at it, is as to the authority of the board of estimate and apportionment to establish the position and fix the salary of a stenographer and typewriter in the office of the public administrator in the county of Bronx, for it is not questioned that, if the board had such power, the position was duly established and the salary duly fixed and the relator is entitled to hold the position and to receive the salary. The sole ground upon which payment has been withheld is that her office was never legally created, because not specifically provided for by statute.

It is quite obvious, or at the very least may reasonably be assumed, that the public administrator of a populous county like the Bronx will find it impossible to properly and efficiently perform the duties of his office without some clerical assistance, and, as modern business is conducted, if he needs any clerical assistance at all, a stenographer and typewriter would be one of the most necessary aids. It is true that the act erecting the county of Bronx does not in specific terms authorize the public administrator of that county to appoint subordinates, but by section 3 of chapter 548 of the Laws of 1912, erecting the county of Bronx, as amended by chapter 825, Laws of 1913, the public administrator of that county is given "all the authority and powers within said county of Bronx as are now conferred by law upon the public administrator of the county of New York." Section 2 of chapter 230, Laws of 1898, confers upon the public administrator of the county of New York "the appointment and removal of his subordinates." This we think confers upon the public administrator of the Bronx the power to appoint and remove his subordinates, but it does not confer upon him authority to create positions or fix salaries. All it does is to provide that, when the positions have been legally created, the power of appointment thereto and removal therefrom shall vest in the public administrator.

The power to create the position and to fix the salaries therefor must be found, if at all, in another section of the act erecting the county of Bronx. Section 4 of chapter 548, Laws of 1912, as amended by chapter 266, Laws of 1913, appears to vest such power in the board of estimate and apportionment. That section, after fixing specifically the salaries of certain elective officers of the county, provides as follows:

"And except as herein otherwise provided the positions, terms, grades, salaries, and compensation of all persons who may be appointed under the provision of law by any of the officers above mentioned *or* who may be required to carry on the public business as contemplated by this act shall be fixed by the board of estimate and apportionment of the city of New York. * * * "

The use of the disjunctive "or," in the sentence quoted, seems to divide the positions to be created, and the terms, grades, and compensation thereof into two categories: First, those to be appointed by the elective officers mentioned in the earlier part of the section; and, secondly, those not so appointed, but who may nevertheless be required to carry on the public business of the county. If this were not the purpose of using the disjunctive and the power of the board of estimate and apportionment to create positions was intended to be limited to the subordinates of the enumerated elective officers there was no apparent reason for inserting after the clause clearly providing for all such subordinates, the words "or who may be required to carry on the public business as contemplated by this act." These words must therefore be considered as intended to provide for the creation of positions not directly subordinate to and filled by appointment by the enumerated elective officers. And this appears to be a most reasonable construction of the act. The Legislature was engaged in erecting a new county, situated wholly within the city of New York. To do this effectively it was deemed necessary to create a county organization of officials, to carry on the county business. It was logical therefore to determine by the act what the principal officers of the county should be, and how they should be compensated. It would have been quite impracticable to determine intelligently in advance, and to specify in the act just what and how many subordinate officials would be required to carry on the public business, and as a consequence that matter was left to the discretion of the board of estimate and apportionment, a board which was doubtless deemed, and with justice, to be in a position to determine from time to time what subordinate officials were necessary to properly carry on the business of the county and how they should be compensated. This was quite in line with the general legislative practice of recent years. It is obvious, and must have been contemplated by the Legislature, that all of the public business of the county might not be conducted by the elected officers. Indeed, the office of public administrator is a case in point. The business conducted by him is certainly public business, and, although appointed by the surrogate, he is an independent officer not a subordinate of the surrogate, and, as has been said, it is not unreasonable that he should need clerical assistance.

That portion of section 4 of the act of 1912 as amended above quoted is aptly expressed to meet just such a case, and, as has already been

said, if not intended to meet such a case it is surplusage and has no apparent application. We find nothing in the act to indicate that it was the legislative intent that the public administrator should pay, out of the compensation provided for him, the cost of running his office. The provision that he shall be compensated in part by fees, while once common enough, has of late fallen generally into disuse. It was probably inserted into the Bronx county act by inadvertence. In my opinion the board of estimate and apportionment had power to create the position held by the relator and to fix the salary thereof. If so, she was legally appointed and entitled to be paid. The order appealed from therefore should be affirmed, with $10 costs and disbursements.

INGRAHAM, P. J., concurs.